Melissa G. Fulgencio (CBN 277663)
E-mail: mel@upliftlaw.net
**UPLIFT LAW, P.C.**
650 North Rose Drive, Suite 620
Placentia, California 92870
Telephone: 714.248.5612
Facsimile:  714.582.3990

**ATTORNEY FOR PLAINTIFFS**
Excel Fitness Fair Oaks, LLC; Jaguar
Muay Thai, LLC; and Excel Fitness, LLC

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXCEL FITNESS FAIR OAKS, LLC, a California limited liability company; JAGUARY MUAY THAI, LLC, a California limited liability company; EXCEL FITNESS, LLC, a California limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> GAVIN NEWSOM, in his official capacity as Governor of California; XAVIER BECERRA, in his official capacity as the Attorney General of California; SANDRA SHREWY, MPH, MSW, in her official capacity as the Interim Director and State Public Health Officer; DARRELL STEINBERG, in his official capacity as Mayor of the City of Sacramento; THOM BOGUE, in his official capacity as Mayor of the City of Dixon;  OLIVIA KASIRYE, MD, in her official capacity as Sacramento County Public Health Officer; BELA MATYAS, MD, in his official capacity as Solano County Public Health Officer; SCOTT R. JONES, in his official capacity as Sacramento County Sheriff; THOMAS A. FERRARA, in his official capacity as Solano County Sheriff; DANIEL HAHN, in his official capacity as Chief of Police of the City of Sacramento; ROBERT THOMPSON, in his official capacity as Chief of Police of the City of Dixon; ANNE MARIE SCHUBERT, in her official | Case No. <br><br> **COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES** |

Case No. _____
COMPLAINT

capacity as Sacramento County District Attorney; KRISHNA A. ABRAMS, in her official capacity as Solano County District Attorney; SUSANA ALCALA WOOD, in her official capacity as City Attorney for the City of Sacramento; DOUGLAS WHITE, in his official capacity as City Attorney for the City of Dixon; PHIL SERNA, in his official capacity as a Sacramento County Supervisor; PATRICK KENNEDY, in his official capacity as a Sacramento County Supervisor; SUSAN PETERS, in her official capacity as a Sacramento County Supervisor; SUE FROST, in her official capacity as a Sacramento County Supervisor; DON NOTTOLI, in his official capacity as a Sacramento County Supervisor; ERIN HANNIGAN, in her official capacity as Solano County Supervisor; MONICA BROWN, in her official capacity as Solano County Supervisor; JIM SPERING, in his official capacity as Solano County Supervisor; JOHN VASQUEZ, in his official capacity as Solano County Supervisor; SKIP THOMSON, in his official capacity as Solano County Supervisor;  and DOES 1 through 100,

Defendants.

Plaintiffs Excel Fitness Fair Oaks, LLC, a California limited liability company; Jaguar Muay Thai, LLC, a California limited liability company; and Excel Fitness, LLC, a California limited liability company (hereinafter collectively referred to as "Plaintiffs"), by and through their attorneys of record, Uplift Law, P.C., allege claims against the above-named Defendants Gavin Newsom, in his official capacity as Governor of California; Xavier Becerra, in his official capacity as Attorney General of California; Sandra Shrewy, MPH, MSW, in her official capacity as the Director and State Public Health Officer; Darrell Steinberg, in his official capacity as Mayor of the City of Sacramento; Thom Bogue, in his official capacity as Mayor of the City of Dixon; Olivia Kasirye, in her official capacity as Sacramento County Public Health Officer; Bela Matyas, MD, in her official capacity as Solano County Public Health; Thomas A. Ferrara, in his official capacity as Solano County Sheriff; Daniel Hahn,

-2-

in his official capacity as Sacramento Chief of Police; Robert Thompson in his official capacity Chief of Police of the City of Dixon; Summer Stephan, in her official capacity as San Diego County District Attorney; Greg Cox, in his official capacity as a San Diego County Supervisor; Dianne Jacob, in her official capacity as a San Diego County Supervisor; Kristin Gaspar, in her official capacity as an San Diego County Supervisor; Nathan Fletcher, in his official capacity as a San Diego County Supervisor; Jim Desmond, in his official capacity as a San Diego County Supervisor;  and DOES 1 through 100 (hereinafter collectively referred to as "Defendants") as follows:

## **NATURE OF THE ACTION**

1.     Following the outbreak and subsequent global pandemic regarding the novel coronavirus, the State of California began taking purported emergency measures in an effort to slow the spread of COVID-19 such that the medical infrastructure in place is not overwhelmed.

2.     The sovereign people of the State of California have graciously endured an unprecedented suspension of their civil liberties.

3.     However, all government power in this country, no matter how well-intentioned, derives only from the state and federal constitutions.  **Governmental power cannot be exercised in conflict with the constitution, even in a pandemic**.  The Constitution is not suspended when the government declares a state of disaster.  *See In Re Salon A La Mode, Et Al*., No. 20-0340 (Tex. May 5, 2020) (citing *In Re Abbott*, No. 20-0291, 2020 WL 1943226, at *1 (Tex. Apr. 23, 2020).

4.     As COVID-19 spread, local officials scrambled to implement a myriad of measures purporting to protect Californians. California's Governor issued Executive Orders to establish state-wide regulations, which were also implemented and enforced on the county and city level.

5.     Plaintiffs have filed this Action in an effort to challenge the constitutionality of Defendants' Orders that severely limit Plaintiffs' civil rights and liberties by ordering the

1    citizens of the State of California "shelter-in-place" and effectively close any businesses
2    Defendants have arbitrarily deemed "Non-Essential."

3        6.      Defendants' Orders have violated, and continue to violate, Plaintiffs' rights
4    under both the California Constitution, as well as the United States Constitution. As a result
5    of Defendants' unlawful violations of Plaintiffs' civil liberties and rights, Defendants have
6    also caused severe economic damage to Plaintiffs. The economic damages suffered by
7    Plaintiffs is such that Plaintiffs may never financially recover from the harm

8        7.      Accordingly, Plaintiffs have filed this Action seeking: 1) equitable and
9    injunctive relief to enjoin enforcement of Defendants' Orders; 2) declaratory relief that
10    Defendants' Orders violate Plaintiffs' civil rights under: a) U.S.C. § 1983 of the Federal Civil
11    Rights Act; b) the Due Process Clause of the Fifth Amendments; c) the Due Process Clause of
12    the Fourteenth Amendments; and c) Article 1, Sections 1, 7, and 19 of the California
13    Constitution; 3) attorneys' fees and costs incurred by Plaintiffs' in an amount according to
14    proof; 4) monetary damages; and 5) such other and further relief as this Court deems just and
15    appropriate.

16                  **THE PARTIES**

17    **Plaintiffs**

18        8.      Plaintiff Excel Fitness Fair Oaks, LLC is a California limited liability company
19    authorized and doing business in the State of California as Excel Fitness ("Excel Fair Oaks").
20    Excel Fair Oaks' principal place of business is located in Fair Oaks, Sacramento County,
21    California.

22        9.      Plaintiff Jaguar Muay Thai, LLC is a California limited liability company
23    authorized and doing business in the State of California as Jaguar Muay Thai  ("Jaguar").
24    Jaguar's principal place of business is located in Sacramento, Sacramento County, California.

25        10.      Plaintiff  Excel Fitness, LLC ("Excel") is a California corporation authorized
26    and doing business in the State of California as Excel Fitness ("Excel"). Excel's principal place
27    of business is located in Dixon, Solano County, California.

28    **Defendants**

11.     Defendant Governor Gavin Newsom ("Newsom" or "Governor")) is made a party to this Action in his official capacity as the Governor of the State of California. The California Constitution vests the "supreme executive power of the State" in the Governor, who "shall see that the law is faithfully executed." Cal. Const. Art. V, § 1. Governor Newsom signed Executive Order N-33-20 (the "Executive Order") on or about March 17, 2020.

12.     Defendant Xavier Becerra ("Becerra") is made a party to this Action in his official capacity as the Attorney General of California. Under California law, Becerra is the chief law enforcement officer with supervision over all sheriffs in the State of California. Cal. Const. Art. V, § 13.

13.     Defendant Sandra Shrewy, MPH, MSW (Shrewy") is made a party to this Action in her official capacity as the Director and State Public Health Officer and is sued in her official capacity pursuant to *Ex Parte Young* to challenge the constitutionality of her office's list of "Essential Critical Infrastructure Workers" which was issued by Dr. Angell on March 22, 2020 to complement Newsom's Executive Order.

14.     Defendant Darrell Steinberg ("Steinberg") is made a party to this Action in his official capacity as the Mayor of Sacramento in the State of California. Steinberg is sued in his official capacity under the rule of *Ex Parte Young* to enjoin the enforcement of any Order, instituted to shut down all "Non-Essential" businesses.

15.     Defendant Thom Bogue ("Bogue") is made a party to this Action in his official capacity as the Mayor of Dixon in the State of California. Bogue is sued in his official capacity under the rule of *Ex Parte Young* to enjoin the enforcement of any Order, instituted to shut down all "Non-Essential" businesses.

16.     Defendant Olivia Kasirye, MD ("Kasirye") is made a party to this Action in her official capacity as the Sacramento County Public Health Officer in the State of California. Kasirye is sued in her official capacity under the rule of *Ex Parte Young* to enjoin the enforcement of any Order, instituted to shut down all "Non-Essential" businesses.

17.     Defendant Bela Matyas, MD ("Matyas") is made a party to this Action in her official capacity as the Solano County Public Health Officer. Matyas is sued in her official

capacity under the rule of *Ex Parte Young* to enjoin the enforcement of any Order, instituted to shut down all "Non-Essential" businesses.

18.     Defendant Susan Alcala Wood ("Wood") is made a party to this Action in her official capacity as City Attorney for the City of Sacramento. Wood is sued in her official capacity under the rule of *Ex Parte Young* to enjoin the enforcement of any Order, instituted to shut down all "Non-Essential" businesses.

19.     Defendant Douglas White ("White") is made a party to this Action in her official capacity as City Attorney for the City of Dixon. White is sued in his official capacity under the rule of *Ex Parte Young* to enjoin the enforcement of any Order, instituted to shut down all "Non-Essential" businesses.

20.     Defendant Scott R. Jones ("Jones") is made a party to this Action in his official capacity as Sacramento County Sheriff. Under California law, Jones has the responsibility to enforce the Sacramento County Order in Sacramento County. *See* Cal. Gov't Code § 26601.

21.     Defendant Thomas A. Ferrara ("Ferrara") is made a party to this Action in his official capacity as Solano County Sheriff. Under California law, Ferrara has the responsibility to enforce the Solano County Order in Solano County. *See* Cal. Gov't Code § 26601.

22.     Defendant Daniel Hahn ("Hahn") is made a party to this Action in his official capacity as the Chief of Police for the City of Sacramento. Under California law, Hahn has the responsibility to enforce the Sacramento County Order in the City of Sacramento. *See* Cal. Gov't Code § 26601.

23.     Defendant Robert Thompson ("Thompson") is made a party to this Action in his official capacity as the Chief of Police for the City of Dixon. Under California law, Thompson has the responsibility to enforce the Solano County Order in the City of Dixon. *See* Cal. Gov't Code § 26601.

24.     Defendant Anne Marie Schubert ("Schubert") is made a party to this Action in her official capacity as the Sacramento County District Attorney. Under California law, Stephan has the responsibility to enforce the Sacramento County Order in Sacramento County. *See* Cal. Gov't Code § 26601.

COMPLAINT

25.     Defendant Krishna A. Abrams ("Abrams") is made a party to this Action in her official capacity as the Solano County District Attorney. Under California law, Abrams has the responsibility to enforce the Solano County Order in Solano County. *See* Cal. Gov't Code § 26601.

26.     Defendant Phil Serna is made a party to this Action in his official capacity as a member of the Sacramento County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials.

27.     Defendant Patrick Kennedy is made a party to this Action in his official capacity as a member of the Sacramento County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

28.     Defendant Susan Peters is made a party to this Action in her official capacity as a member of the Sacramento County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

29.     Defendant Sue Frost is made a party to this Action in her official capacity as a member of the San Diego County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

30.     Defendant Don Nottoli is made a party to this Action in his official capacity as a member of the San Diego County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.*, Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

COMPLAINT

31.     Defendant Erin Hannigan is made a party to this Action in her official capacity as a member of the Solano County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

32.     Defendant Monica Brown is made a party to this Action in her official capacity as a member of the Solano County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

33.     Defendant Jim Spering is made a party to this Action in his official capacity as a member of the Solano County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

34.     Defendant John Vasquez is made a party to this Action in his official capacity as a member of the Solano County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

35.     Defendant Skip Thomson is made a party to this Action in his official capacity as a member of the Solano County Board of Supervisors, which exercises broad legislative, executive, and quasi-judicial authority under California law, including the supervision of the county sheriff and public health officials. *See, e.g.,* Cal. Gov't Code §§ 25000, *et seq.*; Cal. Health & Safety Code § 101000.

36.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 100, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs are informed and believe and thereon

1    allege that each of the Defendants designated herein as a DOE is responsible in some manner

2    for the events and happenings herein referred to. As such, Plaintiffs will seek leave of Court

3    to amend this Complaint to insert the true names and capacities of said Defendant as they

4    become identified.

5        37.    As alleged herein, Defendants are responsible for the implementation of various

6    Executive Order(s) and other Civil Orders ("Orders") that are in direct violation of the United

7    States and California Constitutions, including but not limited to, 42 U.S.C. § 1983.

8    Accordingly, each and every Defendant acted under color of state law with respect to all acts

9    or omissions herein alleged.

10                                   **JURISDICTION AND VENUE**

11       38.    The Court has subject matter jurisdiction over the claims asserted in this action

12   based upon Federal Question Jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because

13   this action involves rights derived from the United States Constitution and because the action

14   seeks to prevent Defendants from interfering with federal rights. This Court has authority to

15   award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief

16   and damages under 28 U.S.C. § 1343(a); and attorneys' fees and costs under 42 U.S.C. § 1988.

17       39.    Furthermore, this is, in part, a civil action under 42 U.S.C. § 1983 seeking

18   damages and injunctive relief against Defendants for committing acts, under color of law, with

19   the intent and for the purpose of depriving Plaintiffs of rights secured under the Constitution

20   and laws of the United States, as well as for refusing or neglecting to prevent such deprivations

21   and denials to Plaintiffs.

22       40.    Additionally, this action arises under 42 U.S.C. § 1983 in relation to Defendants'

23   deprivation of Plaintiffs' Constitutional rights to Due Process and Equal Protection under the

24   Fifth and Fourteenth Amendments to the United States Constitution.

25       41.    Jurisdiction is also appropriate in this Court pursuant to 28 U.S.C. § 1343(a)(3)–

26   (4) to redress the deprivation, under color of any State law, statute, ordinance, regulation,

27   custom or usage, of any right, privilege, or immunity secured by the Constitution, and to secure

28   equitable or other relief under any Act of Congress providing for the protection of civil rights.

42.   This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because Plaintiffs' state claims are so related to their federal claims such that they are part of the same case and controversy of those federal claims described herein under Article III of the United States Constitution.

43.   The U.S. District Court for the Eastern District of California is the appropriate venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and (2) because it is the District in which Defendants either maintain offices or do substantial official government work; the District in which Defendants exercise authority in their official capacities; and the District in which Defendants will continue to enforce the Orders and Emergency Directives that are the basis for Plaintiffs' claims; and the District in which substantially all of the events occurred that have given rise to Plaintiffs' claims.

44.   There is a present and actual controversy between and among Plaintiffs and Defendants.

45.   The relief requested is authorized pursuant to 28 U.S.C. §§ 2201 and 2202 (declaratory judgment); 28 U.S.C. § 1651(a) (injunctive relief); 42 U.S.C. § 1988 (right to costs, including attorneys' fees); and Cal. Gov't. Code § 8572 (restitution for state commandeering of private or personal property during state of emergency).

## SUBSTANTIVE ALLEGATIONS

### I.   THE GOVERNOR'S STAY-AT-HOME ORDER

46.   On March 4, 2020, California Governor Gavin Newsom ("Newsom") declared a state of emergency to exist in California in light of the COVID-19 pandemic. A true and correct copy of Defendant Newsom's Proclamation of a State of Emergency is attached hereto and incorporated herein as **Exhibit 1**.

47.   On or about March 13, 2020, President Donald J. Trump proclaimed a National State of Emergency as a result of the threat of the emergence of COVID-19. https://www.whitehouse.gov/presidential-actions/proclamation-declaringnational-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

48.     Subsequently, on March 19, 2020, Defendant Newsom signed Executive Order N-33-20 (the "Executive Order"). The Executive Order directed all residents "to immediately heed the current State public health directives," including an order of the state public health officer reprinted in the Executive Order. A true and correct copy of Defendant Newsom's Executive Order N-33-20 is attached hereto and incorporated herein as **Exhibit 2**.

49.     The Executive Order "order[ed] all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sector as outlined at https://www.cisa.gov/identifying-critical- infrastructure-during-covid-19."

50.     The Executive Order further explained that "[t]he federal government has identified sixteen (16) critical infrastructure sectors whose assets, systems, and networks, whether physical or virtual, are considered so vital to the United States that their incapacitation or destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof." Defendant Newsom therefore "order[ed] that Californians working in these 16 critical infrastructure sectors may continue their work because of the importance of these sectors to Californians' health and well-being."

51.     The Executive Order explained that it aimed "to establish consistency across the state in order to ensure that we mitigate the impact of COVID-19."

52.     This March 19, 2020 Executive Order sought to balance the need to protect Californians from infection against the need to maintain Californians' access to vital supplies and services.  In so doing, Defendant Newsom based the policy on one issue: the federal government's characterization of certain businesses as being a part of the "critical infrastructure" and therefore "essential" to Californians. Thus, those businesses deemed "essential" were and are allowed to continue operating as part of California's coordinated response to COVID-19.

53.     All other businesses, such as Plaintiffs, who did not fall into any of the sixteen (16) "critical infrastructure" sectors, were automatically defined as "Non-Essential" and were forced to immediately cease operations.

54.     The Executive Order was clear that it was **not** establishing a state-level baseline inviting county innovation above and beyond a minimum; rather, this Executive Order intended that only certain essential businesses shall be permitted to remain open statewide to provide essential goods and services to all Californians.

55.     The Public Health Officers ("PHO") for each county were, in part, tasked with implementing these overreaching orders.  It became clear very early on that the PHOs were completely out of their depth.  PHOs had been given a vast amount of power that they were incompetent to wield. Unlike the Governor, PHOs are not elected positions. In fact, PHOs, some of whom are tasked with the public health of millions, do not require a degree in science or medicine.

OLIVIA KASIRYE, MD, in her official capacity as Sacramento County Public Health Officer; BELA MATYAS, MD

56.     Defendants Kasirye and Matyas issued similar "shelter-in-place," "stay at home," and "shut down" orders (the "County Orders") for all "Non-Essential" businesses on or about March 17, 2020 for the Counties of Sacramento and Solano.  True and correct copies of these County Orders are attached hereto as **Exhibit 3**.

57.     Since the passage of the County Orders, Defendants Jones, Ferrara, Hahn, and Thompson have sought to vigorously enforce them against Plaintiffs and other "Non-Essential" businesses.

58.     Additionally, on or about March 22, 2020, Defendant Angell issued a comprehensive directive setting forth the types of "Essential Critical Infrastructure Workers" that were to "help state, local, tribal and industry partners as they work to protect communities, while ensuring continuity of functions critical to public health and safety, as well as economic and national security."

59.     Altogether, Defendants' Orders have caused widespread and catastrophic damage to the California economy through the government-mandated closure of Plaintiffs' businesses.

COMPLAINT

60.    As a result of Defendants' Orders mandating closure, Plaintiffs have had difficulty in satisfying their financial obligations, having been forced to lay off a significant number of employees.

61.    Plaintiffs have further expended large sums of money in an effort to comply with Defendants' vague Orders.

62.    On numerous occasions, Plaintiffs have sought clarification regarding Defendants' Orders and apparently arbitrary or selective enforcement thereof, to no avail.

63.    The county level orders that were promulgated in response to the Governor's Order were haphazard, at best, leaving California with a patchwork of entirely different laws for each county. Counties were unable to agree even upon the simplest issues, such as indoor and/or outdoor mask wearing, or the use of gloves.

64.    Further, upon information and belief, despite repeated requests by media and the press, the scientific data that Defendants relied upon in promulgating their orders has never been disclosed. As early as March and April 2020, the press began requesting information under California's Public Records Act.  To date, no responses have been provided.

65.    Moreover, Defendants have asserted that violations of their orders carry criminal penalties, threatening jail time and significant fines for businesses and individuals that do not comply.

66.    Defendants' Orders violate the Due Process Clause of the Fourteenth Amendment because they fail to give reasonable notice to persons of ordinary intelligence of what actions are forbidden under the law.  Plaintiffs have been forced to operate between a rock and a hard place, trying to comply with all of the applicable Orders, but unable to discern what the applicable law permits. This is precisely the dilemma the Due Process Clause's requirement of fair notice seeks to avoid, particularly where, as here, there is no procedure for Plaintiffs even to challenge the Defendants' Orders.

67.    Defendant Newsom then directed the Office of Emergency Services to "take all necessary steps to ensure compliance with this Order" and that the "Order shall be enforceable pursuant to California law, including, but not limited to, Government Code section 8665."

1       68.    California Government Code Section 8665 states, "Any person who violates any

2   of the provisions of this chapter or who refuses or willfully neglects to obey any lawful order

3   or regulation promulgated or issued as provided in this chapter, shall be guilty of a

4   misdemeanor and, upon conviction thereof, shall be punishable by a fine not to exceed one

5   thousand dollars ($1,000) or by imprisonment not to exceed six months or by both such fine

6   and imprisonment."

7   **II.    THE GOVERNOR'S REOPENING ORDER**

8       69.    On May 4, 2020, Governor Newsom issued Executive Order N-60-20

9   concerning the second and third stages of California's "four-stage framework . . . to allow

10  Californians to gradually resume various activities" ("The Governor's Reopening Order").

11  The Governor's Reopening Order directed the State Public Health Officer to "establish

12  criteria and procedures. . . to determine whether and how particular local jurisdictions may

13  implement public health measures that depart from the statewide directives," specifically

14  "measures less restrictive than any public health measures implemented on a statewide basis."

15  A true and correct copy of Defendant Newsom's Executive Order N-60-20 is attached hereto

16  and incorporated by reference as **Exhibit 4**.

17      70.    The Governor's Reopening Order also states that it should not be "construed to

18  limit the <u>existing authority</u> of local health officers" to adopt "more restrictive" or

19  "addition[al]" measures" (emphasis added). Under existing law, "[a] county or city may make

20  and enforce within its limits all local, police, sanitary, and other ordinances and regulations

21  <u>not in conflict with general laws</u>." Cal. Const. art. XI, § 7 (emphasis added).

22      71.    And when, as here, the Governor exercises the State's "police power" during a

23  state of emergency, the Governor's "orders and regulations shall have the force and effect of

24  law." Cal. Gov't Code §§ 8567, 8627.  Accordingly, the Governor's Reopening Order only

25  allows counties to act within their "existing authority"—that is, to adopt measures that are

26  consistent with the Governor's orders or that address matters on which the Governor's orders

27  are silent.  It does not, and cannot be read to, allow a county to override the Governor's Order

28

COMPLAINT

1  by extending its authority by extending its authority to include criminal penalties and possible
2  imprisonment.

3  **IV. PLAINTIFFS' GYM BUSINESSES**

4  **Excel Fair Oaks**

5       72.     Excel Fair Oaks caters to the fitness goals of its members, and prides itself on
6  its dedication to providing members with a safe and clean environment, high quality
7  equipment, and qualified instructors and trainers.

8       73.     Following Defendants' Order mandating the closure of "Non-Essential"
9  businesses, Excel Fair Oaks closed.

10      74.     Unable to provide its members with concrete responses regarding reopening,
11  Excel Fair Oaks members began canceling their memberships.

12      75.     While Excel Fair Oaks remained closed, they suspended membership fees and
13  collected no dues throughout its closure.

14      76.     During Excel Fair Oaks' closure, they invested thousands of dollars toward
15  compliance with Defendants' Orders, purchasing personal protection equipment, such as
16  masks, gloves, cleaning supplies, and thermometers, for employees.

17      77.     Excel Fair Oaks further hired additional employees to continually clean the gym
18  in accordance with Excel Fair Oaks' new COVID-19 procedures.

19      78.     On or about June 12, 2020, Defendants permitted Excel Fair Oaks  to reopen
20  with certain limitations.

21      79.     Excel Fair Oaks reopened in accordance with Defendants' with all then-existing
22  rules and regulations from the government.

23      80.     Shortly thereafter, pursuant to Defendants' Orders, Excel Fair Oaks was required
24  to move certain portions of its operations outside; however, Excel Fair Oaks' ability to operate
25  outdoors in compliance with Defendants' Orders is and was limited as a result of its location.

26      81.     Due to Defendants' Orders and limitations placed on Excel Fair Oaks' business
27  operations, more than two hundred (200) members canceled their memberships.

28

COMPLAINT

82.    Patrick Rodda, Bryan Nunes, and George Nunes, Members of Excel Fair Oaks, have suffered emotional distress as a result of Defendants' Orders and resulting limitations on Excel Fair Oaks' business operations.

83.    As a direct and proximate result of Defendants' Orders, Excel Fair Oaks  has suffered damages  in the amount of approximately $278,900 as a result of training new employees on COVID-19 procedures, legal consultations, purchases for personal protective equipment, cleaning supplies, and moving equipment.

**Jaguar**

84.    Following Defendants' Order mandating the closure of "Non-Essential" businesses, Jaguar closed.

85.    Unable to provide its members with concrete responses regarding reopening, Jaguar's members began canceling their memberships.

86.    Moreover, Jaguar is heavily reliant upon student memberships. With many, if not all, institutions of higher education, such as California State University – Sacramento, being forced to cease all in-person classes, Jaguar has likewise suffered damages in the loss of student memberships.

87.    While Jaguar remained closed, Jaguar suspended membership fees and collected no dues throughout its closure.

88.    When, pursuant to Defendants' Orders, Jaguar was allowed to reopen with limitations, Jaguar's took precautions as required by Defendants' Orders.

89.    As a direct and proximate result of Defendants' Orders, Jaguar has suffered damages  in the amount of approximately $61,224 as of August 31, 2020 as a result of new COVID-19 procedures, legal consultations, new equipment, cleaning supplies, and other upgrades to Jaguar's facility.

**Excel**

90.    Excel is a business that specializes in general whole-body wellness, taking an individual approach to improve members' health and providing a safe and clean space for its members.

91.     As a result of Defendants' Orders, on or about March 18, 2020, Excel was forced to stop billing its members' monthly dues.

92.     Additionally, Excel averaged approximately 150 new members per month, the growth of which stopped as a result of Defendants' Orders.

93.     From in or around March 18, 2020 until June 11, 2020, Excel lost approximately 600 members.

94.     On or about June 12, 2020, Excel reopened with new cleanliness and social distancing protocols in accordance with Defendants' Orders. However, this reopening was short-lived.

95.     When, pursuant to Defendants' Orders, Excel re-opened on or about June 12, 2020, Excel spent approximately $5,000 on cleaning supplies in order to remain in compliance with Defendants' Orders and Center of Disease Control guidelines.

96.     On July 13, 2020, Defendants mandated the closure of many businesses, including gyms, unless they could be modified to operate outdoors.

97.     Excel's ability to operate outdoors was limited due to inadequate space, as well as the unhealthy weather conditions of both extreme heat and poor air quality due to wildfires.

98.     Other members stated the unhealthy weather conditions from both the extreme heat and the wildfires prevented them from working out outside.

99.     Following Defendants' requirement that gyms and fitness centers operate outside, approximately 400 additional members canceled their memberships with Excel.

100.    Since Excel has operated its gym and/or fitness center outside, it has failed to gain any new members.

101.    Moreover, Defendants, by and through Defendant Thompson regularly harassed Excel, citing Excel for alleged violations of Defendants' Orders without providing Excel with any clear indication as to how Excel violated Defendants' Orders.

102.    The City of Dixon Police Department, at the direction of Defendant Thompson, engaged in harassing behavior such that many of Excel's members and/or employees felt threatened by the police presence.

103.   As a direct and proximate result of Defendants' Orders, Excel has suffered damages  in the amount of approximately $244,000 as of August 31, 2020 as a result of new COVID-19 procedures, legal fees, citations, personal protection equipment, additional staff and related training, new equipment, cleaning supplies, and other upgrades to the Excel facility.

## FIRST CLAIM FOR RELIEF

### VIOLATION OF THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT
### (*By Plaintiffs against All Defendants*)

104.   Plaintiffs incorporate by reference and re-allege each and every allegation set forth in all preceding paragraphs as if fully set forth herein.

105.   The United States Supreme Court has long held that "the Fifth Amendment…was designed to bar Government from forcing people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

106.   Defendants' Orders and Emergency Directives mandated that because Plaintiffs were "Non-Essential" businesses, they were required to shutter and cease all operations as a means to slow the spread of the novel COVID-19. Such a mandate completely and unconstitutionally deprived Plaintiffs of all economically beneficial use of their businesses without just compensation.

107.   Although a sovereign government has an inherent "police power" that is reserved for the States by the Tenth Amendment to the United States Constitution, such "police power" is not without Constitutional limits. *See Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926).

108.   The government's "police power" is restricted by Constitutional considerations, including but not limited to the Fifth Amendments "Takings Clause."

109.   Defendants' Orders, combined with Defendants' enforcement thereof, has caused a total or partial regulatory taking of Plaintiffs' property without just compensation in violation of the Takings Clause of the Fifth Amendment to the United States Constitution. At

a minimum, the effect of Defendants' Orders constitute a "partial" taking under the *Penn Central* three-factor test. *See Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). As a result, Defendants' violation of the Takings Clause of the Fifth Amendment has proximately and legally harmed Plaintiffs.

110.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their Constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders and Emergency Directives, namely, the financial harm Plaintiffs have suffered and continue to suffer as a result of Defendants' unlawful Orders and Emergency Directives is such that Plaintiffs may be forced to permanently close.

111.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief, as well as temporary, preliminary, and permanent injunctive relief invalidating the Orders and Emergency Directives and restraining enforcement thereof.

112.    Accordingly, Plaintiffs have found it necessary to engage the services of private council to vindicate their rights under law and therefore are entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT

#### (*By Plaintiffs against All Defendants*)

113.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth in all preceding paragraphs as if fully set forth herein.

114.    The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." The fundamental liberties protected by the Due Process Clause include most of the rights enumerated in the Bill of Rights. *See Duncan v. Louisiana*, 391 U.S. 145, 147-149 (1968).

115.    The liberties afforded by the Due Process Clause of the Fourteenth Amendment further extend to one's personal choices central to individual dignity and autonomy, including

intimate choices that relate to personal beliefs. *See, e.g., Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972).

116.  A State "violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015).

117.  Plaintiffs have a fundamental property interest in conducting lawful business activities that are protected by the Due Process Clause of the Fourteenth Amendment.

118.  Defendants' Orders fail to provide sufficient notice of which actions will potentially subject Plaintiffs to civil or the criminal penalties. It would, at best, be unclear to any person of ordinary intelligence what Defendants' Orders collectively prohibit and/or allow.

119.  In addition, Defendants' Orders purport to impose criminal liability on Plaintiffs and their employees should they fail to follow Defendants' Orders. Moreover, Defendants have, at times, threatened to impose criminal liability on Plaintiffs' patrons.

120.  The Executive Orders, and Defendants enforcement thereof, violate Plaintiffs' substantive due process rights secured by the Fourteenth Amendment to the United States Constitution.

121.  In addition, Defendant Counties have violated the Due Process Clause insomuch as it fails to provide any meaningful procedure for challenging its determination that a business is non-essential, either pre or post deprivation of Plaintiffs' constitutional right to use of their property. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432-33 (1982). Instead, Defendants simply announced that Plaintiffs' Gyms were not essential, without any formal process.

122.  Defendants' Orders expressly deprived, and continue to deprive, Plaintiffs of their rights and liberties in lawfully operating their businesses by ordering the closure of "Non-Essential" businesses without affording Plaintiffs with a constitutionally adequate hearing to present their case in favor of allowing Plaintiffs' businesses to remain open.

123.  Accordingly, Defendants failed to comply both procedural and substantive due process requirements as provided for by the Fourteenth Amendment of the United States Constitution when depriving Plaintiffs of their rights and liberties as they relate to Plaintiffs' respective properties / businesses, which would have given Plaintiffs a meaningful opportunity to respond to the Executive Orders and explain how and why the Executive Orders were unconstitutional as applied to Plaintiffs.

124.  Because Defendants' Orders are based upon a procedurally deficient and substantively unlawful process, Defendants directly and proximately damaged Plaintiffs by depriving Plaintiffs of their ability to lawfully operate their respective businesses without unconstitutional government intervention.

125.  Defendants' Orders that require Plaintiffs to abstain from conducting lawful business in the State of California, violates Plaintiffs' rights under the United States Constitution.

126.  Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their Constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders and Emergency Directives, namely, the financial harm Plaintiffs have suffered and continue to suffer as a result of Defendants' unlawful Orders and Emergency Directives is such that Plaintiffs may be forced to permanently close.

127.  Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

128.  Plaintiffs respectfully seek a declaration that the Defendant Counties' Orders violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

**THIRD CLAIM FOR RELIEF**

**VIOLATION OF THE CALIFORNIA CONSTITUTION**

**Right to Liberty (Cal. Const. Art. 1, § 1)**

**(*By Plaintiffs against All Defendants*)**

129.   Plaintiffs incorporate by reference and re-allege each and every allegation set forth in all preceding paragraphs as if fully set forth herein.

130.   Article 1, § 1 of the California Constitution provides, in relevant part, "Article 1, Section 1: All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

131.   Defendants Orders have interfered both with Plaintiffs' rights and liberties, as set forth in Article 1, Sections 1, 7, and 19 of the California Constitution, as well as deprived Plaintiffs of the use, enjoyment, and ability to operate their respective businesses on account of a discriminatory and arbitrary classification as "Non-Essential" businesses.

132.   Defendants' Orders have proximately and legally caused Plaintiffs' financial harm, which will continue unless and until this Court enjoins Defendants from enforcing their respective Orders.

133.   Defendants' Orders that require Plaintiffs to abstain from conducting lawful business in the State of California, violates Plaintiffs' rights under the California Constitution.

134.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their Constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders and Emergency Directives, namely, the financial harm Plaintiffs have suffered and continue to suffer as a result of Defendants' unlawful Orders and Emergency Directives is such that Plaintiffs may be forced to permanently close.

135.   Accordingly, Plaintiffs have found it necessary to engage the services of private council to vindicate their rights under law and therefore are entitled to an award of attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

<u>**FOURTH CLAIM FOR RELIEF**</u>

**VIOLATION OF THE CALIFORNIA CONSTITUTION**

**Right to Liberty (Cal. Const. Art. 1, § 7)**

(***By Plaintiffs against All Defendants***)

136.   Plaintiffs incorporate by reference and re-allege each and every allegation set forth in all preceding paragraphs as if fully set forth herein.

137.   Article 1, Section 7 of the California Constitution provides, in pertinent part:

Article 1, Section 7:

(a) A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws; provided, that nothing contained herein or elsewhere in this Constitution imposes upon the State of California or any public entity, board, or official any obligations or responsibilities which exceed those imposed by the Equal Protection Clause of the 14th Amendment to the United States Constitution with respect to the use of pupil school assignment or pupil transportation. In enforcing this subdivision or any other provision of this Constitution, no court of this State may impose upon the State of California or any public entity, board, or official any obligation or responsibility with respect to the use of pupil school assignment or pupil transportation, (1) except to remedy a specific violation by such party that would also constitute a violation of the Equal Protection Clause of the 14th Amendment to the United States Constitution, and (2) unless a federal court would be permitted under federal decisional law to impose that obligation or responsibility upon such party to remedy the specific violation of the Equal Protection Clause of the 14th Amendment of the United States Constitution.

138.   The guarantee of equal protection under the California Constitution is substantially equivalent and analyzed similarly to that provided by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *See Kenneally v. Med. Bd.*, 27 Cal. App. 4th 489 (App. 2 Dist. 1994).

139.   Article 1, § 1 of the California Constitution has further been judicial defined as meaning no person or class of persons shall be denied the same protections of the laws enjoyed by other persons or other classes in like circumstances in the lives, liberty, and property, and in their pursuit of happiness. *See People v. Romo*, 14 Cal.3d 189 (1975); *Gray v. Whitmore*, 17 Cal. App. 3d 1 (1971).

140.   Defendants' Orders that require Plaintiffs to abstain from conducting lawful business in the State of California, violates Plaintiffs' rights under the California Constitution.

141.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their Constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders and Emergency Directives, namely, the financial harm Plaintiffs have suffered and continue to suffer as a result of Defendants' unlawful Orders and Emergency Directives is such that Plaintiffs may be forced to permanently close.

142.     Accordingly, Plaintiffs have found it necessary to engage the services of private council to vindicate their rights under law and therefore are entitled to an award of attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

## FIFTH CLAIM FOR RELIEF

### VIOLATION OF CALIFORNIA GOVERNMENT CODE § 8572

### Commandeering Private Property or Personnel

### (*By Plaintiffs against Defendant Newsom*)

143.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth in all preceding paragraphs as if fully set forth herein.

144.     The State of California's Government Code, Title 2, Chapter 7, Article 3, Section 8572, states in pertinent part:

> In the exercise of the emergency powers hereby vested in him during a state of war emergency or state of emergency, the Governor is authorized to commandeer or utilize any private property or personnel deemed by him necessary in carrying out the responsibilities hereby vested in him as Chief Executive of the state and the state shall pay the reasonable value thereof.

145.     On March 4, 2020, Defendant Newsom declared a "State of Emergency" in response to the threat of the spread of COVID-19 throughout California's communities.

146.     Subsequently, on or about March 19, 2020, Defendant Newsom issued Executive Order N-33-20. *See* **Exhibit 2**.

147.     Executive Order N-33-20 states, in relevant part, that "all individuals living in the State of California" "stay home or at their place of residence except as needed to maintain

COMPLAINT

continuity of operations of the federal critical infrastructure sectors outlined at https://www.cisa.gov/identifying-criticalinfrastructure-during-covid-19."

148.   Defendant Newsom's Order further "identified 16 critical infrastructure sectors (discussed herein) whose assets, systems, and networks, whether physical or virtual, are considered so vital to the United States that their incapacitation or destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof" such that Defendant Newsom ordered that "Californians working in these 16 critical infrastructure sectors continue their work because of the importance of these sectors to Californians' health and well-being."

149.   Defendant Newsom's Order continued, "this Order is being issued to protect the public health of Californians" and that "our goal is simple, we want to bend the curve, and disrupt the spread of the virus."

150.   Defendant Newsom then directed the Office of Emergency Services to "take all necessary steps to ensure compliance with this Order" and that the "Order shall be enforceable pursuant to California law, including, but not limited to, Government Code section 8665."

151.   California Government Code Section 8665 states, "Any person who violates any of the provisions of this chapter or who refuses or willfully neglects to obey any lawful order or regulation promulgated or issued as provided in this chapter, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punishable by a fine not to exceed one thousand dollars ($1,000) or by imprisonment not to exceed six months or by both such fine and imprisonment."

152.   As a result of the issuance of the Governor's Order, California businesses, such as Plaintiffs, were not included in any of the sixteen (16) "critical infrastructure sectors," and therefore were "non-essential" and effectively ordered, under penalty of fine and threat of imprisonment, to cease conducting any of their lawful daily business activities.

153.   By virtue of this Executive Order, Defendant Newsom commandeered and utilized Plaintiffs' businesses for the purpose of slowing the spread of COVID-19.  To date, however, the State of California has not paid Plaintiffs the "reasonable value thereof" in

exchange for Defendant Newsom's commandeering and utilization of Plaintiffs' "non-essential" businesses.

154.     Plaintiffs have found it necessary to engage the service of counsel to vindicate their rights under California Government Code Section 8572.  Plaintiffs are entitled to an award of attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

A. Issue a declaratory judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that Defendants' Orders listed above violate the Due Process Clause as applied to Plaintiffs because they fail to provide fair notice of what the law requires;

B. Set aside Defendants' Orders; holding Defendants' Orders to be unlawful;

C. Permanently enjoin Defendants and all persons and entities acting in concert with Defendants, including but not limited to any law enforcement agencies, from enforcing Defendants' Orders;

D. Issue a Temporary Restraining Order and a preliminary injunction preventing Defendants from enforcing or implementing their Orders until this Court rules upon the merits of this lawsuit;

E. Permanently enjoin Defendants and all persons or entities acting in concert with Defendants, including but not limited to any law enforcement agencies, from enforcing the Orders;

F. Award damages arising out of their § 1983 Claims, and specifically under the Fifth Amendment of the U.S. Constitution and Article 1, Section 19 of the California Constitution's Taking Clause(s);

G. Award Plaintiffs the reasonable value of the loss of the respective businesses by virtue of Defendants' Orders pursuant to California Government Code Section 8572;

H. Award reasonable attorneys' fees and costs incurred in this action pursuant to 42 U.S.C. § 1988 and Cal. Gov't Code § 8572; and

I. Any other such relief as this Court may deem just and proper.


Dated:  October 26, 2020          **UPLIFT LAW, P.C.**

By: _____

Melissa G. Fulgencio
Attorneys for Plaintiffs

COMPLAINT